IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE UNITED FOOD AND COMMERCIAL WORKERS,
LOCAL 23,

    Plaintiff,

v.                            Civil Action No. 5:08CV177
                                     (STAMP)
MOUNTAINEER PARK, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

The plaintiff, the United Food and Commercial Workers, Local 23 ("the union"), filed the above-styled civil action to compel arbitration against defendant, Mountaineer Park, Inc. ("Mountaineer Park"). The union brought suit in the Western District of Pennsylvania. The union's complaint asked for the following relief: (1) that the defendant be ordered to arbitrate; (2) that the defendant be ordered to pay attorneys' fees; and (3) that the court grant further equitable relief as deemed just and proper.

On December 1, 2008, the parties filed a joint motion to transfer venue to this Court. On the same day, the motion was granted. On April 27, 2009, both the plaintiff and the defendant filed a motion for summary judgment. Both the plaintiff and the defendant filed a response. Only the defendant filed a reply.

On June 17, 2009, this Court granted the parties' joint motion to stay the scheduling order, vacating the pretrial conference and trial, and staying the scheduling order, so that the court could decide the action based on the parties' cross-motions for summary judgment.

This Court has reviewed the parties' pleadings and the relevant law and believes that a decision on the merits on the defendant's motion for summary judgment is warranted. For the reasons that follow, the defendant's motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

## II. Facts

The plaintiff, a labor union, serves as the collective bargaining representative of certain individuals the defendant employs. The parties entered into two collective bargaining agreements. The first agreement ran from March 5, 2005 through March 1, 2008 ("2005 agreement"). The second agreement, still in effect, runs from March 1, 2008 to March 1, 2011 ("2008 agreement"). The parties dispute the terms of the 2008 agreement. The plaintiffs filed this suit to compel the defendants to arbitrate three grievances. The first grievance involves pay. Four lead cashiers "bid down," using their seniority, into regular cashier openings in 2007. The union filed grievances challenging the starting rates assigned to these workers, arguing that those

workers who bid down should not have lost any seniority. Mountaineer Park refused to arbitrate, citing the 2008 agreement. Additionally, two union members filed a grievance over the denial of their requests to take December 26 off from work. Again, the defendant refused to arbitrate, citing the 2008 agreement. The plaintiff believes that the 2008 agreement requires the defendant to participate in binding arbitration. The defendant disagrees.

### III. Applicable Law

A. Motion for Summary Judgment

Under Federal Rule of Civil Procedure (Rule) 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly

3

supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all

inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

A. Affidavit of Vincent Azzarello

Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by . . . further affidavits." The defendant used Vincent J. Azzarello, Director of Human Resources at Mountaineer Park, to verify the information in the defendant's motion for summary judgment. In paragraph 2, Azzarello states that he has personal knowledge of the facts and circumstances giving rise to the two grievances that the plaintiff wants to arbitrate and that he participated in the negotiation of the 2005 agreement and the renewal 2008 agreement. In paragraph 3, Azzarello states he has read the defendant's motion for summary judgment with close attention to the recitals of fact. In paragraph 4, Azzarello states that the factual statements "are true and correct based on [his] personal knowledge, information and belief." The plaintiff argues that because paragraph 4 contains the phrase "information

5

and belief," the entire affidavit fails.  This Court does not agree.

An entire affidavit cannot be stricken because some statements are made based on the affiant's understandings instead of his personal knowledge. <u>Chambers v. McLean Trucking Co.</u>, 550 F. Supp. 1335, 1338 (M.D.N.C. 1981), <u>aff'd</u>, 701 F.2d 163 (4th Cir. 1983). The plaintiff cites <u>Antonio v. Barnes</u>, 464 F.2d 584 (4th Cir. 1972) (per curiam), to support its claim that if an affidavit relies in part upon information and belief, the entire affidavit fails. In <u>Antonio</u>, the affidavit provided "no showing whatever that the statements therein were made on personal knowledge as required by the Rule.  From the face of the affidavits, they might well be based on mere hearsay . . . ." <u>Id</u>. at 585.  In this case, unlike <u>Antonio</u>, the affiant states he has personal knowledge in the affidavit.  Azarello states that he was present for the negotiations of the collective bargaining agreements and that he has personal knowledge of the grievances.

The plaintiff further argues that the affidavit is not specific enough to meet the standards of Rule 56.  This Court does not agree.  The plaintiff directs this Court to <u>Meadows v. Huttonsville Correctional Ctr.</u>, 793 F. Supp. 684 (N.D. W. Va. 1992), for the proposition that this Court rejects conclusory claims. <u>Meadows</u> does not involve the sufficiency of an affidavit, but rather involves the requirement that a party opposing a motion

6

for summary judgment must support its material factual assertions by using more than the conclusory claims stated in its complaint. Id. at 687. The plaintiff also relies on Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124 (4th Cir. 2002), to support its argument that the affidavit is not specific enough for Rule 56. The plaintiff's reliance on this case is misplaced. In Bryant, the plaintiff contended that the affidavits were defective because they did not state they were based on personal knowledge and did not state that the affiants were competent to testify. Id. at 135 n.9. The Fourth Circuit found the plaintiff's argument without merit. "In the Rule 56(e) context, 'ordinarily, officers would have personal knowledge of the acts of their corporations.'" Id. (citing Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1342 (4th Cir. 1992)). The court stated that the affidavits, containing a description of the affiants' job titles and duties, were sufficient to establish the statements were made with personal knowledge. In this case, Azarello is an officer of the company and his job title and the fact that he helped negotiate the collective bargaining agreements were mentioned in the affidavit.

Finally, the plaintiffs contend the affidavit fails because speculation is insufficient to defeat summary judgment. While it is true that unsupported speculation is insufficient to defeat summary judgment, Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995), nothing in the present case amounts

7

to unsupported speculation. Further, the plaintiff has not identified any possible speculation to which it objects.

Therefore, the supporting affidavit of the defendant will not be stricken from the record.

B. <u>The Pay Grievance</u>

One party may not compel another party to arbitrate a dispute absent an agreement contractually obligating that party to arbitrate. <u>AT&T Technologies, Inc. v. Communications Workers of Am.</u>, 475 U.S. 643, 648 (1986); <u>Cumberland Typographical Union No. 244 v. Times & Alleganian Co.</u>, 943 F.2d 401, 404 (4th Cir. 1991). Arbitration agreements are construed using the traditional rules of contract construction. <u>Id.</u> As such, the intent of the parties should be "'gathered from the entire language of the instrument.'" <u>E. Gas & Fuel Assocs. v. Midwest-Raleigh, Inc.</u>, 374 F.2d 451, 454 (4th Cir. 1967) (citing <u>Bowlby-Harman Lumber Co. V. Commodore Servs., Inc.</u>, 107 S.E.2d 602, 607 (W. Va. 1959)). In reviewing the language, courts give more weight to specific language than general language in the agreement. <u>Burgin v. Office of Pers. Mgmt.</u>, 120 F.3d 494, 498 (4th Cir. 1997). Finally, when reading an agreement, courts should consider a party's repeated performance in interpreting that agreement. Restatement (Second) of Contracts, § 202(4) (1981).

Courts, as a matter of law, determine whether a dispute under a collective bargaining agreement is arbitrable. <u>AT&T</u>, 475 U.S. at

648; Cumberland, 943 F.2d at 404. The Supreme Court set out four principles to help lower federal courts decide whether a dispute should proceed to arbitration:

> Under the first principle, the parties must have contracted to submit the grievance to arbitration. The second principle requires that the court determine whether the contract provides for arbitration of the particular grievance in question. The third principle demands that the court not decide the merits of the grievance while determining the arbitrability of the dispute. Finally, if the contract contains an arbitration clause, a presumption of arbitrability arises. The court should not decline to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

Cumberland, 943 F.2d at 404 (citing AT&T, 475 U.S. at 650).

In examining the pay grievance, this Court will apply the four factors laid out by the Supreme Court in determining whether the dispute is arbitrable. First, the parties negotiated a grievance procedure in Article 12 of the 2008 agreement, which provides for arbitration in certain situations. Section 12.1(a) provides that "the Union retains the right to determine whether to proceed to arbitration with respect to any grievances filed by [unit] employees." The plaintiff argues that this language bestows upon the plaintiff the sole right to determine when the defendant must arbitrate. This Court does not agree. This language, which reserves the right for plaintiff to refuse to take its own members' grievances to arbitration, does not give the plaintiff the power to force the defendant arbitrate any matter the plaintiff wishes to

9

arbitrate.  Thus, the parties have contracted to arbitrate some, but not all, grievances under the 2008 agreement.

The next step requires this Court to examine whether the contract provides for arbitration of the pay dispute.  When negotiating an agreement, an employer may reserve all matters not expressly modified or restricted by a specific provision of the agreement for its sole discretion.  Nat'l Labor Relations Bd. v. Am. Nat'l Ins. Co., 343 U.S. 395, 408-09 (1952).  In Article 4 of the 2008 agreement, the parties inserted a Management Rights Clause.  Part (j) of this Article states that, "[e]xcept as expressly modified or restricted by a specific provision of this Agreement, Employer reserves the right in accordance with its judgment in connection with its [slots] employees: Except as otherwise specifically provided herein, to exercise all rights it had prior to the signing of this Agreement."  Appendix A, paragraph 3, of the 2008 agreement states that "[i]t is specifically agreed that the hiring rates and annual increases set forth in ths Appendix 'A' are minimums, and that the Employer may pay rates and increases in excess of these at its sole discretion."  The use of the phrase "sole discretion" is of particular importance here.  See Local Union 1393, Int'l Bhd. of Elec. Workers v. Util. Dist. of W. Ind. Rural Elect. Membership Coop., 167 F.3d 1181, 1185 (7th Cir. 1999) (stating that where there is an express clause reserving a decision to management and another clause stating that the

authority is subject only to any limitations contained in the agreement, the union could not compel the company to arbitration).

The plaintiff and the defendant dispute the real issue of the pay grievance. The plaintiff argues that the defendant failed to give employees annual increases. The defendant argues that the issue is the proper pay after a major supervening event: the voluntary downgrade to a job with less responsibilities and less pay. The defendant has paid the annual increases each year. The issue is whether the 2008 agreement allows employees who down-bid into lower positions the right to keep the longevity pay of their previous position. The 2008 agreement, taken as a whole, clearly and unambiguously shows that the parties did not intend to take a grievance such as this to arbitration. First, the parties stated in the 2008 agreement that hiring rates and annual increases are at the sole discretion of the defendants. Second, there are no specific provisions in the 2008 agreement that allow down-bidding employees to retain any part of their former pay. The 2008 agreement does, however, provide for a classification start rate in Appendix A. Third, section 8.4(6) provides that if an employee bids into another classification and does not ask to return within 60 days, the employee loses seniority in the former position. This language does not contemplate that seniority is retained when an employee changes positions. The language clearly shows that, as a result of the parties' bargaining, there is no right to retain past

annual pay increases where an employee voluntarily steps into a lower position.  Fourth, the 2008 agreement expressly limits the defendant's sole discretion in certain circumstances related to pay.  In Section 8.10 (non-union transfers into bargaining unit classifications), 15.1 (increase in the legal minimum wage), and 15.2 (the creation of new bargaining unit positions), the management is restricted in some way from unilaterally setting wages.  Fifth, prior to the 2005 agreement, the defendant paid persons going into different job classifications at the hiring rate for that classification.  The 2005 agreement changed two aspects of the defendant's pay policy: the agreement established minimum hourly hiring rates and minimum rate increases for covered employees.  These are discussed in Appendix A.  Sixth, and finally, the plaintiff has not challenged the defendant's pay policy until now.  The plaintiff's acceptance of this policy for so many years is not determinative, but is a factor that this Court will consider in its decision of whether the dispute is arbitrable.  Restatement (Second) of Contracts, § 202(4) (1981).

The 2008 agreement clearly provides for management discretion on pay increases beyond the base starting salary for a given position.  While the presence of an arbitration clause establishes a presumption of arbitrability, the 2008 agreement is clear on its face.  Where the meaning of an agreement is clear, the presumption is inapplicable.  Local Union 1393, 167 F.3d at 1185.

Looking at the agreement as a whole, the plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim to compel arbitration on the pay grievance. As a result, the defendant's motion for summary judgment must be granted and the plaintiff's motion for summary judgment must be denied.

C. <u>The Vacation Grievance</u>

This Court now turns to the vacation grievance. Using the same analysis as above, this Court will not compel the defendant to arbitrate these grievances. The plaintiff wants to arbitrate the defendant's denial of December 26 as a vacation day to some employees who requested that day off from work. Section 14.6 expressly provides that "[t]he Employer will approve/disapprove selected vacation dates, in writing, by April 1, and post the finalized vacation schedule by April 15." In addition, there is no specific language in the agreement limiting the right for the defendant to approve or disapprove a vacation request for December 26. The plaintiff argues that section 14.3, which states employees are eligible for vacation from January 1 through December 31 denies the defendant the right to disapprove the request. This Court does not agree. The 2008 agreement provides that employees may request to take off any day of the year. The agreement does not, however, guarantee that the employee will receive the requested dates. The parties' agreement allows the defendant to approve or disapprove

13

the selected dates.  Finally, by examining the document as a whole, the parties included an express limitation to the defendant's right to approve or disapprove a vacation day.  Section 13.2 provides a method for assigning employees to work on December 25.  If the plaintiff and the defendant had intended an additional limitation for December 26, the parties could have provided for it in the 2008 agreement.

The plaintiff has failed to establish the existence of any genuine issue of material fact and, as a matter of law, has failed to state a claim to compel arbitration on the vacation grievances.  As a result, the defendant's motion for summary judgment must be granted and the plaintiff's motion for summary judgment must be denied.

D.  <u>Attorneys' Fees</u>

The plaintiff has requested that attorneys' fees be granted.  The plaintiff argues that the arguments underlying the defendant's refusal to arbitrate are "without justification."  In reviewing the plaintiff's claim, the measure for a case such as this, where the challenge relates to the "fundamental issue of arbitrability," is "the relatively lenient one of whether [the challenge] has any arguable basis in law."  <u>Capitol Cement Corp., v. Cement, Lime, Gypsum, & Allied Workers' Div. Of Int'l Bhd. of Boilermakers</u>, 17 F. Supp. 2d 564, 567 (N.D. W. Va. 1998) (quoting <u>United Food & Commercial Workers, Local 400 v. Marval Poultry Co., Inc.</u>, 876 F.2d

346, 351 (4th Cir. 1989)). This Court has found that the defendant's challenge to arbitrability not only has an arguable basis in law, but also is accurate. Therefore, the plaintiff's request for attorneys' fees is denied.

V. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment is GRANTED. The plaintiff's motion for summary judgment is DENIED. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: September 23, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE